**UNITED STATES BANKRUPTCY COURT**

**EASTERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| In re:<br><br>PATRICK J. MCCAULEY and<br>PATRICIA L. MCCAULEY,<br><br>Debtors. | Case No. 25-23919-C-11<br><br>DCNs: PPM-23 & PPM-24 |

**FINDINGS OF FACT AND CONCLUSIONS OF LAW ON ALLOWANCE OF CONTESTED CLAIMS NOS. 2 AND 3**

Chapter 11 Debtors Patrick J. McCauley and Patricia L. McCauley object to Claims No. 2 and No. 3 filed by Bette M. Dambacher and Gary P. Dambacher, Trustees Dambacher Family Trust. ("Dambachers").

Jurisdiction

Jurisdiction is founded on 28 U.S.C. § 1334(b). Objections to claims are core proceedings that a bankruptcy judge may hear and determine. 28 U.S.C. § 157(b)(2)(B).

In view of the debtors' history of bankruptcy case filings, this Court has exercised its discretion to conduct a trial proceeding with presentation of testimony and evidence in the interest of determination of the merits of the subject claims with a final order in an issue-preclusive manner, instead of a more summary procedure that could necessitate a later trial if the claims issues linger.

Case Background

This is the Debtors' fourth bankruptcy case affecting the contested claims: (1) No. 2013-50194, chapter 12, filed

1/31/2013, dismissed 4/28/2020; (2) No. 2021-20485, chapter 12, filed 2/10/2021, dismissed 6/29/2021; (3) 2025-20833, chapter 11, filed 2/26/2025, dismissed 7/11/2025; and (4) No. 2025-23919, chapter 11, filed 7/30/2025 now pending in this Court.

This Court conducted a trial on the Debtors' objections to Claims Nos. 2 and 3 in order to fix the allowed amounts of the respective claims so that the Debtors may formulate a chapter 11 plan. The procedure is as provided by Federal Rule of Bankruptcy Procedure 3012.

The Debtors concede that the Claimants have allowable claims but challenge the amounts owed and demand an accounting.

At trial, the Debtors testified by way of declaration, made oral presentations, and presented an "Evidentiary Brief" in support of their objections. The Creditors rested on their written presentations. The evidentiary record is now closed.

In addition to the in-court presentations and trial exhibits, the Hearing Record consists of:

Claim No. 2 $727,780.90 (Mortgage 8/10/2003 - Modoc County)
Claim No. 3 $418,873.82 (Judgment 3/7/2007 renewed - Tuolumne County 9/20/2014; renewed again 10/20/2023)

Debtors' Objection to Claim No. 2 (Dkt. 118)
Creditor Response (Dkt. 152)

Debtors' Objection to Claim No. 3 (Dkt. 123)
Creditor Response (Dkt. 151)

Debtors' Evidentiary Brief on Claims Nos. 2 & 3 (Dkt. 189)
Debtors' Status Conference Statement (Dkt. 190)

Stipulation and Order Between Debtors and Dambacher Trust, U.S. Bankruptcy Court, Dist. of Nevada, Case No. BK-13-50194-btb, Nevada Dkt. No. 252 (10/3/2019)

Order Terminating Automatic Stay Upon Default of Second Amended 12 Plan, U.S. Bankruptcy Court, Dist. of Nevada, Case No. BK-13-

50194-btb, Nevada Dkt. No. 241 (9/25/2019)

Order Dismissing Chapter 12 Proceeding pursuant to 11 U.S.C. § 1208 Effective June 15, 2020 (U.S. Bankruptcy Court, Dist. of Nevada, Case No. BK-13-50194-btb, Nevada Dkt. No. 305 (4/28/2020).

Findings of Fact

I

Allowance of Claim No. 2

Claim No. 2 for $727,780.90 is based on a Note and Deed of Trust with respect to certain property in Modoc County, California.

The Note for $350,000.00 at 6.5% interest was dated August 10, 2003.

Dambachers purchased from the original mortgagees the Note and Deed of Trust in advance of a pending foreclosure, taking an Assignment of Deed of Trust recorded July 6, 2020. Their explanation is that to have allowed the foreclosure would have placed them in the position of a "sold out junior" and erased their status as judgment lien creditors based on a recordation in Modoc County of their Tuolumne County judgment. That explanation is credible as it accurately states California mortgage foreclosure law.

The accounting included in the proof of claim as of July 29, 2025, documents an accumulated debt of $727,780.90.

The components consist of: principal, interest from 6/15/20 to 7/29/25, recording fee, attorney fees (7/6/20 - 2/27/25), foreclosure fees, Modoc County Tax Collector, interest on advances, and attorney fees (2/28/25 - 7/29/25).

The Debtors' Status Conference statement (Dkt. 190), says

"Debtors contend that additional accounting and supporting documentation are necessary to determine the correct amount of the claim, including documentation relating to principal balance calculations, advances, taxes, fees, foreclosure-related activity, and other charges in the proof of claim."

The only specific item directly questioned is payment of $111,974.42 to the Modoc County Tax Collector. Neither the amount nor the validity of the taxes are questioned. Rather, the Debtors contend that a Farm Credit loan may have been available to pay those taxes and that the ensuing loan may have been forgiven.

The Dambachers respond that the taxes were paid by them to prevent an imminent tax sale.

There is no question that the Modoc County taxes were due and payable. They were paid and became a legitimate component of the secured debt.

The Debtors' assertions are not enough to rebut the prima facie validity of the $727,780.90 proof of claim.

This Court is persuaded that Claim No. 2 is allowable in the full amount claimed.

## II

## Allowance of Claim No. 3

### A

Claim No. 3 for $418,873.82 is based on a judgment of the Tuolumne County Superior Court in favor of Dambachers against Patrick J. McCauley, individually and dba Mayar's Halal Meat, and 2XP Ranches, LLC, entered March 7, 2007, in the amount of $157,261.90.

No Satisfaction of Judgment has ever been recorded in Tuolumne County with respect to the 2007 judgment.

The Tuolumne County judgment was renewed September 20, 2014, in the amount of $150,103.35, which amount reflected the terms of the Debtors' Second Amended Chapter 12 Plan ("Chapter 12 Plan") confirmed by the Nevada Bankruptcy Court July 29, 2014.

The 2014 renewal noted that judgment interest calculated at 10% in accordance with California Code of Civil Procedure § 685.10 from the date of judgment to the date of confirmation of the Chapter 12 Plan was $118,125.36.

The Tuolumne County judgment was renewed again on October 20, 2023, in the amount of $355,674.26.

The 2023 renewal explained at Attachment 6.b. that the judgment debt was calculated based on the original judgment debt, plus interest at the legal rate of 10%, plus costs, and giving credit of $37,714.00 for payments received under the Chapter 12 Plan.

The rationale for disregarding the terms of the Chapter 12 Plan is that the effect of the March 4, 2020, dismissal of the Chapter 12 case on account of unreasonable delay prejudicial to creditors per 11 U.S.C. § 1208(c)(1) and material default by the debtors with respect to the terms of a confirmed plan per 11 U.S.C. § 1208(c)(6), operated to eliminate the terms of the Chapter 12 Plan.

Proof of Claim No. 3 for $418,873.82 adds to the 2023 renewal interest at the legal rate of 10% for the 649 days between October 20, 2023, and the date of filing the instant Chapter 11 Petition on July 30, 2025.

B

Chapter 12 Plan

Pursuant to the Debtors' Second Amended Chapter 12 Plan, the judgment debt was reduced to $125,000 with interest at 5% as of July 29, 2014, with a requirement of annual payments and then a $25,000 balloon payment at the end of the Plan.

At the time of the Chapter 12 confirmation, judgment interest of about $118,125.36 had accrued pursuant to California Code of Civil Procedure § 685.10, but was treated as zero in the chapter 12 plan, with a correlative lump sum of $25,000 due at the end of the plan.

The Debtors claimed at that time that they were entitled to credits totaling $109,805.92 in calculating the amount of the judgment debt. By reducing the amount of the judgment debt and by reducing the judgment interest rate from 10% to 5% the Chapter 12 plan took into account, and netted out, the credits then claimed by the Debtors.

The renewal of the 2007 judgment filed December 31, 2014, was signed by "Milton M. Dambacher" September 20, 2014, and took into account the Debtors' first Chapter 12 Plan payment of $2,526.00 and noted the effect of the Chapter 12 Plan.

Debtors had made the first payment of $2,526.00 on August 1, 2014. Interest accrued under the Chapter 12 Plan terms from July 29, 2014, to December 31, 2014.

Ultimately the Debtors made the following payments: 8/1/2014, $2,526.00; 9/1/2015, $8,787.00; 9/1/2016, $8,797.00; 10/9/2017, $8,797.00; 11/26/2018, $8,797.00.

The Second Amended Chapter 12 Plan provided for $25,000.00

attorney's fees at the end of the plan. In addition, it prescribed a 25% penalty ($31,250.00) if Debtors defaulted or the case was dismissed or converted.

The Debtors defaulted in 2019. They failed to make the required balloon payment at the end of the plan.

After taking into account the payments the Debtors had made under their Chapter 12 plan, the Nevada Bankruptcy Court entered an Order on September 25, 2019, declaring that the judgment that Dambachers may enforce and collect pursuant to its Tuolumne County judgment lien was $178,470.01 as of September 17, 2019.

By Order entered October 3, 2019, pursuant to stipulation of the Dambachers and McCauleys, the Nevada Bankruptcy Court temporarily suspended enforcement of the judgment lien, clarified that "the judgment upon which the Dambacher Trust may collect is $178,470.01 as of September 1, 2019, plus interest at the legal rate, and an additional sum of $10,000.00 for Dambacher Trust's attorney's fees, which shall be paid upon the sale of the Debtors' home and farm (*aka* ranch), whether voluntarily or involuntarily."

The Debtors did not appeal the Nevada Bankruptcy Court's Order of October 3, 2019.

The stipulation was premised on the promise of the Debtors to sell their home and farm (*aka* ranch).

The Debtors did not honor their promise embodied in the stipulation.

By Order entered April 28, 2020, the Nevada Bankruptcy Court dismissed the Debtors' chapter 12 case effective June 15, 2020, on the bases of unreasonable delay and material default of plan

terms under a confirmed plan. 11 U.S.C. § 1208(c)(1) & (c)(6). The Debtors did not appeal.

## Conclusions of Law

### I

### Proof of Claim No. 2

Proof of Claim No. 2 for $727,780.90 is based on a mortgage debt incurred August 10, 2003, with respect to certain real property in Modoc County, California.

The Dambachers took an Assignment of Deed of Trust from the original mortgagees on July 6, 2020, in order to prevent a pending foreclosure that would have had the effect of making them a "sold out junior," hence eliminating their judgment lien status against that Modoc County property of the Dambachers' judgment lien based on the 2007 judgment of the Tuolumne County Superior Court that is the subject of Proof of Claim No. 3.

This Court believes the Dambacher evidence regarding the circumstances and intention of taking that Assignment.

The proof of claim is in proper form prescribed by Rule 3001, is accompanied by evidence the security interest has been perfected, and is accompanied by an itemized statement of the debt.

Having been signed and filed in accordance with the Federal Rules of Bankruptcy Procedure, it is entitled to status as prima facie evidence of the claim's validity and amount.

The Debtors contest the inclusion in the mortgage debt of the payment by Dambachers of $111,974.42 to the Modoc County Tax Collector. There is no contention that the $111,974.42 Modoc

County tax debt was not due and owing.

The Dambacher testimony is that they paid the Modoc County tax debt to prevent a tax foreclosure. This Court believes that testimony.

The Debtors' testimony is that they believed that a Farm Credit loan may have been available to the Debtors or to their son to pay $111,974.42 to Modoc County Tax Collector and that Farm Credit might have eventually forgiven such debt.

The Debtors' double-barreled may and might speculations are too remote and too uncertain to rebut the prima facie evidence of the validity and amount of Proof of Claim No. 2.

Hence, Proof of Claim No. 2 will be allowed in the full amount claimed.

II

Proof of Claim No. 3

A

Proof of Claim No. 3 for $418,873.82 is based on a judgment of the Tuolumne County Superior Court in favor of Dambachers against Patrick J. McCauley, individually and dba Mayar's Halal Meat, and 2XP Ranches, LLC, entered March 7, 2007, in the amount of $157,261.90.

Proof of Claim No. 3 is in the proper form prescribed by Rule 3001, is accompanied by evidence the judgment lien security interest has been perfected, and is accompanied by an itemized statement of the debt.

Having been signed and filed in accordance with the Federal Rules of Bankruptcy Procedure, it is entitled to status as prima

facie evidence of the claim's validity and amount.

The Debtors attempt to rebut the prima facie evidence of the claim's validity with various assertions that are not backed by evidence that this Court finds to be credible. In order to believe them, this Court would be required to ignore the official records regarding the Tuolumne County Superior Court judgment and disregard California law regarding enforcement of judgments.

The Debtors have not presented evidence sufficient to persuade this Court that the Claimants' prima facie evidentiary case has been rebutted.

The Debtors testified that the original judgment creditor, Claimants' predecessor Milton M. Dambacher (now deceased), was always generous and supportive of them and did not immediately seek to enforce his recorded judgment. The initial lack of judgment enforcement activity tends to confirm their view that Milton M. Dambacher was willing to stay his hand. This Court believes the Debtors' testimony in that respect.

Although the Debtors assert that, as early as 2008, they believed that the judgment debt would be forgiven, it is plain that the recorded judgment continued to be enforceable at the discretion of the judgment creditor.

If the judgment debt had actually been forgiven, then Tuolumne County records would include recorded Satisfaction of Judgment. There is no recorded Satisfaction of Judgment.

It is significant that Milton M. Dambacher personally signed the 2014 renewal of judgment. That is persuasive evidence that the 2007 judgment debt was not forgiven by Milton M. Dambacher. It is plausible that the effect of the Great Recession after 2008

on real estate values rendered judgment enforcement temporarily undesirable as an uneconomic enterprise until the real estate market recovered. Hence, the lack of enforcement by the judgment creditor does not warrant an inference of an intent to forgive the judgment debt. In any event, the absence of a recorded Satisfaction of Judgment is conclusive.

Upon the death of Milton M. Dambacher, the present Claimants as successor trustees of the Dambacher Family Trust, became the judgment creditors and have ever since sought to enforce, or at least to preserve, their judgment lien rights.

B

In their Nevada Chapter 12 case, the Debtors obtained significant benefits regarding the judgment when the Bankruptcy Court reduced the amount of the judgment debt, effectively erased more than $100,000 in accrued judgment interest, and judicially reduced judgment interest rate from the 10% prescribed by California law to 5% for the duration of the Chapter 12 plan.

The Debtors contend that the two credits totaling $109,805.92 were not taken into account. The Nevada Bankruptcy Court's erasure of more than $100,000 in 2014 represents an accommodation of the credits claimed by the Debtors. It follows that the credits were taken in account at the time of confirming the Debtors' Chapter 12 plan in 2014.

When the Debtors defaulted in 2019, the Nevada Bankruptcy Court did a careful accounting, giving credit for all payments the Debtors had made during the plan and fixed the adjusted judgment debt at $178,470.01.

In addition, pursuant to a stipulation to which the Debtors were party, the Nevada Bankruptcy Court also provided that interest would be at the "legal" rate, which under California law is 10%, not the 5% the Debtors had enjoyed during the Chapter 12 plan.

The Nevada Bankruptcy Court's Order was not appealed and became final and binding on the Debtors. Their claim objection amounts to an impermissible collateral attack on that order.

By Order entered October 3, 2019, pursuant to stipulation of the Dambachers and McCauleys, the Nevada Bankruptcy Court temporarily suspended enforcement of the judgment lien, clarified that "the judgment upon which the Dambacher Trust may collect is $178,470.01 as of September 1, 2019, plus interest at the legal rate, and an additional sum of $10,000.00 for Dambacher Trust's attorney's fees, which shall be paid upon the sale of the Debtors' home and farm (*aka* ranch), whether voluntarily or involuntarily."

The Debtors did not appeal the Nevada Bankruptcy Court's Order of October 3, 2019.

The stipulation was premised on the promise by the Debtors to sell their home and farm (*aka* ranch).

The Debtors did not honor their promise embodied in the stipulation.

By Order entered April 28, 2020, the Nevada Bankruptcy Court dismissed the Debtors' chapter 12 case effective June 15, 2020, on the bases of unreasonable delay and material default of plan terms under a confirmed plan. 11 U.S.C. § 1208(c)(1) & (c)(6). The Debtors did not appeal the dismissal order.

C

Effect of Dismissal of Chapter 12 Case

As a matter of law, the dismissal of the Chapter 12 case operated to eliminate the orders of the Nevada Bankruptcy Court judicially adjusting the amount of the judgment debt and reducing the judgment interest to 5% from the 10% prescribed by California law.

Specifically, unless the court, for cause, orders otherwise, a dismissal of a case reinstates any lien voided under Bankruptcy Code § 506(d). 11 U.S.C. § 349(b)(1)(C).

Upon dismissal, the property right inherent in the judgment lien "revests ... in the entity in which such property was vested immediately before the commencement of the case." 11 U.S.C. § 349(b)(3).

As Congress explained at the time of enacting Bankruptcy Code § 349(b):

> The basic purpose of the subsection is to undo the bankruptcy case, as far as practicable, and to restore all property rights to the position in which they were found at the commencement of the case.

House Rep. No. 95-595, 95th Cong., 1st Sess. 337-338 (1977); Senate Rep. No. 95-989, 95th Cong. 2d Sess. 48-49 (1978); 3 COLLIER ON BANKRUPTCY ¶ 349.03, 16th ed. Richard Levin & Henry J. Sommer, eds. in chief (2026).

Section 349(b) applies to the dismissal of Chapter 12 cases. In re Derrick, 190 B.R. 346, 350-51 (Bankr. W.D. Wis. 1995), see also, In re Whitmore, 154 B.R. 314, 316 (Bankr. D. Nev. 1993).

Since a judgment lien is a property right, the Nevada Bankruptcy Court's provisions in the Chapter 12 Plan judicially

adjusting the amount of the judgment debt and reducing the judgment interest rate from 10% to 5% were exercises in overriding the Dambacher judgment lien. The underlying legal analysis justifying altering a property right that is fixed by governing state law is that § 506(d) operated to "void" the California judgment lien.

The lien, however, would be permanently "void" only if the Debtors successfully performed their obligations under the Chapter 12 Plan, completed all payments under the plan, and received a Chapter 12 discharge pursuant Bankruptcy Code § 1228. 11 U.S.C. § 1228.

As it turned out, the Chapter 12 case was dismissed for unreasonable prejudicial delay and material plan default without the entry of a Chapter 12 discharge.

The effect of the Chapter dismissal was to reinstate the Dambacher judgment lien as it existed before commencement of the Chapter 12 case. Accordingly, the judgment lien was not "void" per § 506(d). Further, the property right inherent in judgment lien revested in the Dambachers.

D

Judgment Interest

During trial in this Court, the Debtors expressed puzzlement about the interest calculation, particularly the legitimacy of charging interest on interest. They conceded they did not know how judgment interest is calculated.

The analysis of interest under the California judgment enforcement statute has two phases.

In the first phase of California judgment enforcement, post-judgment interest accruing at a rate of 10% from entry of judgment is not compounded (i.e., no interest on interest) with respect to a judgment that has not yet been renewed.

Renewal of a judgment, however, triggers the second phase. The renewed judgment debt includes the judgment amount, together with all judgment interest accrued and not paid before renewal. Thereafter accrued unpaid interest from the first phase is added to and becomes part of the principal amount of the judgment, upon which 10% accrues. Cal. Code. Civ. P. § 683; OCM Principal Opportunities Fund, L.P. v. CIBC World Markets Corp., 168 Cal. App. 185, 193 (2008); See Cal. Law Revision Comm'n comment to § 683.

In short, the California judgment renewal provisions effectuate a compounding of post-judgment interest.

The renewed judgment included in Proof of Claim No. 3 correctly states the governing law at attachment 6.b. when it states, "the amounts set forth under Paragraph 5 are based upon the amount of the judgment as originally entered on March 7, 2007, plus interest at the rate of 10% per annum, as adjusted for payments" made by the Debtors during the course of the Plan.

The adjustments are consistent with the payments identified by the Nevada Bankruptcy Court.

It follows that Claim No. 3 is allowed in the full amount claimed as of the date of filing this chapter 11 case.

Conclusion

This Court having rendered these Findings of Fact and

Conclusions of Law pursuant to Federal Rule of Civil Procedure 52, as incorporated by Federal Rules of Bankruptcy Procedure 7052 and 9014, it is ORDERED:

The Objection to Proof of Claim No. 2 is OVERRULED; and Claim No. 2 is ALLOWED in full as claimed; and

The Objection to Proof of Claim No. 3 is OVERRULED; and Claim No. 3 is ALLOWED in full as claimed; and

Any Chapter 11 Plan proposed by the Debtors must take into account the full allowed amounts of Claim No. 2 and Claim No. 3.

Separate judgments allowing Claim No. 2 and Claim No. 3 shall be entered.

Dated: August 27, 2026

United States Bankruptcy Judge

**INSTRUCTIONS TO CLERK OF COURT**

**SERVICE LIST**

The Clerk of Court is instructed to send the attached document, via the BNC, to the following parties:

Patrick Jay McCauley
25247 County Road 1
Cedarville, CA 96104

Patricia Lee McCauley
25247 County Road 1
Cedarville, CA 96104

David C. Johnston
1600 G. Street, Suite 102
Modesto, CA 95354